UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMONNI D. ANDERSON | 18 CR 522<br><br>Hon. John R. Blakey |

**GOVERNMENT'S POSITION PAPER AS TO SENTENCING FACTORS**

Defendant drove co-defendant Xavier Travis to a warehouse to negotiate a trade of cocaine for guns, inspected one of the firearms, drove with Travis to pick up the cocaine, returned with Travis, and completed the deal. Because Travis led the drugs for guns negotiation (which was actually with undercover officers) and was sentenced to 60 months imprisonment, the government recommends a sentence of 50 months to recognize defendant's lesser but still significant role.

**I.    Background**

    **A.    Defendant's Personal History**

Defendant was born in Savannah, Georgia but moved to the Chicago area as a young boy. (PSR ¶ 58.) Around the age of three, his father was murdered in Joliet, Illinois. (*Id.*) He was raised primarily by his grandparents on his father's side, although his mother had legal custody of him and he has maintained a good relationship with her. (PSR ¶¶ 59, 62.)

Defendant reported that he was expelled from high school during his freshman year, and then enrolled in an alternative half-day program. (PSR ¶ 83.) Around the age of fifteen, defendant became a member of the Mafia Insane Vice Lord street gang.

1

(PSR ¶ 70.) He dropped out of high school in tenth grade, when he was socializing with gang members. (PSR ¶¶ 83-84.)

Defendant was employed in 2014-2015 at a staffing company, but stopped working when he went to jail on a drug charge. (PSR ¶ 89.) He worked for six months at a restaurant in 2018 before being arrested and charged in this case. (PSR ¶ 88.) Defendant has two children with Individual A, who he was in a relationship with from 2009 to 2014. (PSR ¶ 65.)

Individual A's role in the offense is discussed below. By 2014, defendant's romantic relationship with Individual A had ended, and defendant was in a relationship with another woman at the time of the offense. (PSR ¶ 67.) Defendant reports that at the time of this arrest, he was caring for and supporting his children. (PSR ¶¶ 64, 66.) Individual A has since moved to Phoenix, Arizona with the children, where she works as a nursing assistant. (PSR ¶¶ 65, 68.)

### B. Criminal History

At age seventeen, defendant was arrested for possession of a handgun, but that charge was dismissed. (PSR ¶ 48.) At eighteen, he was arrested for unlawful possession of a firearm by a member of a street gang. He was convicted and sentenced to three years' imprisonment for that charge, and served about fourteen months. (PSR ¶ 39.)

Defendant reports that after serving his time, he left the Mafia Insane Vice Lords in 2014. (PSR ¶ 70.) But the following year, he was arrested for delivering less than a gram of a substance containing cocaine within 1,000 feet of a school, and was

sentenced to four years' imprisonment, for which he served about two years. (PSR ¶ 41.)

Defendant also was arrested in 2014 and tried for aggravated battery (allegedly of Individual A) but was found not guilty. (PSR ¶¶ 46, 52.)

### C. Offense Conduct

On August 15, 2018, defendant drove Xavier Travis to a warehouse to trade heroin for a 55-inch television. They believed that the sellers were a biker gang, but they were really undercover ATF agents and officers. (PSR ¶ 10.) At the time, Travis was out on bond after being arrested eight days earlier for possession of crack and heroin. (Doc. 82 at 3.) While defendant waited outside, Travis went into the undercover officers' warehouse and looked at firearms that they were selling. (Doc. 82 at 3-4.) Defendant and Travis left with the television after making the heroin for television trade. (PSR ¶ 10.)

On August 27, 2018, defendant drove Travis back to the warehouse for the purpose of trading cocaine for firearms. (PSR ¶ 12.) While Travis was negotiating the deal, he asked "mind if I let me brother see them?" (GVO at 5.) Defendant then came into the room and shook hands with the undercover officers. Defendant picked up a Colt .357 revolver, opened and closed the cylinder, and wiped it down with his shirt. (PSR ¶ 12.)

After Travis finished negotiating the cocaine for firearms deal, defendant drove away with him to pick it up. (PSR ¶ 12.) They came back with defendant driving the same car, and with Individual A following in a different car. (GVO at 5-6, Ex. ROI ¶

3

4.) Travis reached into Individual A's car to retrieve the cocaine, and he and defendant walked into the warehouse. (*Id.*) Defendant waited in the doorway while Travis looked at the firearms in the toolbox where the undercover officers had placed them. (PSR ¶ 12.) Travis picked up the toolbox and he and defendant were arrested while walking out the door. (*Id.*)

## II.     Sentencing Guidelines Calculation

The government objects to the two level reduction for minor role in the offense in the PSR. Guideline § 3B1.2 asks the sentencing court to compare a defendant's role to that of other participants in the criminal activity. USSG § 3B1.2, comment n.3A. A minor role reduction under Section 3B1.2(b) applies to a defendant "who plays a part in committing the offense that makes [him] *substantially less culpable* than the average participant in the criminal activity." U.S.S.G. § 3B1.2(b) cmt. n.3(A) (emphasis added); *United States v. Guzman-Ramirez*, 949 F.3d 1034, 1037 (7th Cir. 2020). Factors to consider include the degree to which the defendant understood the scope of the criminal activity, the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts, and the degree to which the defendant stood to benefit. *Id.* cmt. n.3(C). Defendant bears the burden of proof on this reduction, by a preponderance of the evidence. *Id.*

In this case, although it "appears that … one person was the 'driving force' in a criminal scheme," namely Travis, the defendant "still had 'an integral role assisting him' in the enterprise," and a minor role reduction is not appropriate. *United States*

*v. Parra*, 402 F.3d 752, 763 (7th Cir. 2005). It not clear why defendant was needed as Travis's driver—for added protection, as a friend and business partner, and/or because of Travis's pending drug case—but it is clear that defendant was participating for a reason. He drove to the warehouse on three separate occasions (once on August 15, 2018, and twice on August 27, 2018) and inspected one of the firearms before the deal was agreed to. Although Travis did the negotiating with the undercover officers, it is noteworthy that Individual A assisted as a drug courier when defendant drove back to the warehouse. Even if defendant was acting at Travis's direction, he still played an "integral" role that is not substantially less culpable than Travis's. *United States v. Rodriguez-Cardenas*, 362 F.3d 958, 959-60 (7th Cir. 2004) (affirming the district court's denial of a minor role adjustment where the defendant made only two drug deliveries, did not interact with suppliers or negotiate with buyers, and acted at co-defendant's direction on where, when, and what to deliver); *see also United States v. Garcia*, 580 F.3d 528, 538-39 (7th Cir. 2009) ("We have previously held that even a minor role reduction need not apply to a defendant who was close to the leaders of a conspiracy and handled or transported drugs.") (collecting cases).

For this reason, the defendant's offense level is 25 which, when combined with a criminal history category of IV, leads to a guidelines range of 84 to 105 months' imprisonment.

### III. A Sentence 50 Months of Imprisonment is Appropriate in Light of the Factors Set Forth in 18 U.S.C. § 3553(a)

Although defendant does not qualify for a minor role reduction, based on the available evidence, defendant played a less significant role compared to Travis. The government recommended a sentence at the low end of the guidelines for Travis, who had the same guidelines range of 84 to 105 months. The Court gave Travis a below-guidelines sentence based on certain mitigating factors (such as a difficult childhood, the role of the undercover operation, and time served during the COVID-19 pandemic) that also apply to defendant. (Tr. 105-07.) In addition, Travis selected the MP-5 firearm with a large capacity magazine, saying that he wanted it for his "personal use." Although defendant was aware that three firearms were being purchased, including the MP-5, he did not play the same role as Travis in selecting the number and types of firearms, which determine the guidelines. A sentence of 50 months would recognize that defendant played a lesser role than Travis, who was sentenced to ten months more, and prevent an unwarranted sentencing disparity between the two defendants in this case.

Any lesser sentence would not be sufficient in light of the seriousness of the offense and the need to provide deterrence and protect the public. When the defendant helped Travis complete the cocaine for guns deal, he had already spent over three years in prison for his previous gun and drug offenses. A sentence of 50 months would mean that defendant will serve at least three and half years (with 85% good time credit) for this offense. A significant increase on his previous terms of

6

imprisonment is necessary to deter defendant from future offenses, and protect the public from the danger of firearms.

**IV.  Conclusion**

For the reasons set forth above, the government respectfully requests that this Court impose a sentence of 50 months' imprisonment.

                                Respectfully submitted,

                                JOHN R. LAUSCH, JR.
                                United States Attorney

By:   /s/ *Charles W. Mulaney*
       CHARLES W. MULANEY
       Assistant U.S. Attorney
       219 South Dearborn St., Rm. 500
       Chicago, Illinois 60604
       (312) 469-6042

Dated: January 27, 2021